UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TINGYU CHENG,<br><br>                    Plaintiff,<br><br>          v.<br><br>PAYPAL, INC.,<br><br>                    Defendant. | Case No.  21-cv-03608-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; GRANTING IN PART REQUEST FOR COSTS**<br><br>[Re:  ECF No. 14] |

This case involves a dispute over Plaintiff Tingyu Cheng's account held with Defendant PayPal, Inc.  Cheng alleges that he held an account with PayPal to receive compensation from college students to whom he offered tutoring services.  PayPal allegedly accused Cheng of receiving payments to his account in violation of PayPal's Acceptable Use Policy, terminated Cheng's account, and confiscated the $76,994.40 balance of the account as liquidated damages. PayPal has brought a motion to compel arbitration, arguing that Cheng agreed to a binding arbitration provision in PayPal's User Agreement, and seeks the fees and costs it incurred in prosecuting an identical state court case brought by Cheng.  *See* ECF No. 14 ("MTC"); *see also* ECF No. 20 ("Reply").  Cheng admits the existence of the provision but opposes the motion on the grounds that the arbitration provision is unconscionable and therefore unenforceable.  *See* ECF No. 18 ("Opp.").  The Court previously found this motion suitable for disposition without oral argument.  *See* ECF No. 25; Civil L.R. 7-1(b).  For the following reasons, the motion to compel arbitration is GRANTED and PayPal's request and costs is GRANTED IN PART.

## I.     BACKGROUND

As alleged in the Complaint, Chen created a PayPal account around May 11, 2009 to receive compensation from college students to whom he was offering tutoring services.  ECF No.

United States District Court<br>Northern District of California

1 ("Compl.") ¶ 11.  When he signed up for the PayPal account, Cheng agreed to the PayPal User

Agreement ("UA").  The second paragraph of the UA states that its "terms include an agreement

to resolve disputes by arbitration on an individual basis."  ECF No. 14 at 39 ("UA" at 1).[1]  When

clicked, the blue text takes a user directly to the "Agreement to Arbitrate" section within the UA.

In relevant part, that section reads:

> You and PayPal each agree that any and all disputes or claims that
> have arisen or may arise between you and PayPal, including without
> limitation federal and state statutory claims, common law claims, and
> those based in contract, tort, fraud, misrepresentation or any other
> legal theory, shall be resolved exclusively through final and binding
> arbitration, rather than in court, except that you may assert claims in
> small claims court, if your claims qualify and so long as the matter
> remains in such court and advances only on an individual (non-class,
> non-representative) basis.  This Agreement to Arbitrate is intended to
> be broadly interpreted.  The Federal Arbitration Act governs the
> interpretation and enforcement of this Agreement to Arbitrate.

UA at 37.  The UA also specifies certain "Restricted Activities" that users of PayPal agree not to

do, including activities that violate PayPal's separate "Acceptable Use Policy" ("AUP").  *See* UA

at 25.  PayPal states, and Cheng does not dispute, that he assented to the UA by (1) checking a box

next to language stating that he had "read and agree[d] to the User Agreement;" and then (2)

clicking a large blue button labeled "Agree and Create Account."  Simons Decl., ECF No. 14 at

32, ¶ 6.

        On or around June 16, 2020, Cheng received an email from PayPal alleging that two of his

transactions violated the AUP.[2]  Compl. ¶ 12.  PayPal requested that Cheng log in to its Resolution

_____

[1] The Court finds that the UA is incorporated into the Complaint by reference, *see* Compl. ¶ 11,

and is properly considered for this motion.  *See Trudeau v. Google*, 349 F. Supp. 3d 869, 876

(N.D. Cal. 2018) (finding that Google's Terms of Service was incorporated by reference into the

complaint).  Cheng has not disputed that the UA attached to PayPal's motion is the one to which

he agreed when he opened his account.  References to the UA will use the page numbers on that

document rather than pagination generated by ECF.

[2] PayPal has since alleged that the transactions violated its AUP because Cheng was accepting

payments for "completing homework assignments, attending classes and taking test[s]" for others.

Center to resolve the issue.  *Id.*  Cheng allegedly did so and submitted information to PayPal.  *Id.*
Notwithstanding that action, on July 13, 2020, PayPal notified Cheng that his PayPal account was
permanently restricted.  *Id.* ¶ 13.  PayPal informed Cheng that the entire balance of his PayPal
account was frozen for 180 days and that PayPal would inform Cheng via email how to retrieve
the balance.  *Id.*  PayPal allegedly did not do so and instead confiscated the entire balance of his
account—$76,994.40—on November 9–10, 2020.  *Id.* ¶ 14.  Cheng's efforts to get PayPal to
return the money—through its customer service department, a demand letter, and a complaint with
the California Consumer Protection Bureau—have been unsuccessful.  *Id.* ¶¶ 15–17.

Cheng originally filed a lawsuit in the Santa Clara County Superior Court, asserting claims
for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment,
conversion, and common count over the same allegations as asserted in this case.  *Cheng v.
PayPal, Inc.*, No. 21CV3755684 (Santa Clara Cty. Super. Ct., filed Jan. 4, 2021).  In response to
the state court complaint, PayPal filed a motion to compel arbitration.  *See* Notice of Motion and
Motion to Compel Arbitration, *id.* (filed Apr. 1, 2021).  Instead of responding to the motion,
Cheng dismissed the case.  *See* Request for Dismissal, *id.* (filed Apr. 30, 2021).

Less than two weeks later, on May 13, 2021, Cheng filed this lawsuit.  *See* Compl.  Cheng
alleges the same causes of action as he did his state court action.  *See id.* ¶¶ 18–39.  Cheng seeks
$76,994.40 in damages, interest, costs of suit, punitive damages, restitution, and reasonable
attorneys' fees.  *Id.* at 7.  PayPal filed this motion on June 17, 2021 and noticed a hearing for
January 13, 2022.  *See* MTC.  The Court submitted the motion without argument on January 7,
2022.  ECF No. 25.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity for the revocation of any
contract."  9 U.S.C. § 2.  "[A]s a matter of federal law, any doubts concerning the scope of
arbitrable issues should be resolved in favor of arbitration."  *Benson v. Casa de Capri Enters.,*

---

Compl. ¶ 17.

1    *LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020); *see also Parfi Holding AB v. Mirror Image Internet,*

2    *Inc.*, 817 A.2d 149, 156 (Del. 2002) (same under Delaware law).  Under the FAA, a court must

3    determine two issues in deciding a motion to compel arbitration:  "(1) whether there is an

4    agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."

5    *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Doe v. Massage Envy Franchising,*

6    *LLC*, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020).

7        Delaware law governs the interpretation of the UA.  *See* UA at 42 ("You agree that . . . the

8    laws of the State of Delaware, without regard to principles of conflicts of laws, will govern this

9    user agreement and any claim or dispute that has arisen or may arise between you and PayPal.").

10   The Court will thus apply Delaware substantive law in answering the two questions above.  *Ebner*

11   *v. Financial Architects, Inc.*, 763 F. Supp. 2d 697, 700 (D. Del. 2011) ("When an agreement

12   contains both a choice-of-law clause and an arbitration clause, the reviewing court will apply the

13   substantive law of the state named in the choice of law clause.") (citing *Mastrobuono v. Shearson*

14   *Lehman Hutton, Inc.*, 514 U.S. 52, 63–64 (1995)).

## III.    DISCUSSION

16       Because the second question under FAA is easily answered, the Court will take the two

17   questions in reverse order.

### A.    The Agreement to Arbitrate Covers this Dispute

19       The Court has no trouble concluding that the answer to the second question—"whether the

20   [arbitration] agreement covers the dispute"—is yes.  *Brennan*, 796 F.3d at 1130.  The arbitration

21   agreement states that "any and all disputes or claims that have arisen or may arise" between Cheng

22   and PayPal, "including without limitation federal and state statutory claims, common law claims,

23   and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be

24   resolved exclusively through final and binding arbitration, rather than in court."  UA at 37.  This

25   lawsuit is a dispute that has arisen between Cheng and PayPal, and it includes "common law

26   claims" based in contract and tort.  *See* Compl. ¶¶ 18–39.  Cheng does not dispute this point.

27   Accordingly, the arbitration agreement covers this dispute if the agreement is valid.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.     The Agreement to Arbitrate is Valid and Enforceable**

The dispute raised by Cheng's opposition is whether the arbitration agreement is valid and enforceable.  Cheng argues that the arbitration agreement is unconscionable under Delaware law and therefore unenforceable.  Opp. at 4–6.  Cheng complains that PayPal, the entity with superior bargaining power, unilaterally drafted the UA and the arbitration agreement.  *Id.* at 4.  Cheng says that the arbitration agreement "contains many unfair practices," such as (1) a limited 30-day opt-out period via physical mail only; (2) a limited promise from PayPal to pay for arbitration fees if a claim is made for less than $10,000, with the claimant paying arbitration costs otherwise; and (3) the location of the arbitration agreement deep in a "54 page[]" document with "multiple sections and subsections."  *Id.* at 5–6.  PayPal responds by defending the enforceability of the arbitration provision.  Reply at 1–6.  PayPal says that its UA is an enforceable clickwrap agreement under Delaware law.  *Id.* at 1–3.  PayPal contends that the individual provisions as not unconscionable, pointing to Delaware case law rejecting Cheng's arguments that similar provisions in other contracts are unconscionable.  *Id.* at 3–6.

The Court agrees with PayPal that the arbitration agreement is valid and enforceable.  First, the arbitration agreement is part of a valid clickwrap agreement under Delaware law.  "A clickwrap agreement is an online agreement that requires a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed.'"  *Massage Envy Franchising*, 2020 WL 7624620, at *2 (quoting *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014)).  "Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law."  *Id.* (citing *Newell Rubbermaid*, 2014 WL 1266827, at *1).  The agreement here is a clickwrap agreement.  To proceed with creating a PayPal account, Cheng needed to (1) check a box indicating that he had "read and agree[d] to the User Agreement," and then (2) click a large blue button labeled "Agree and Create Account."  Simons Decl., ECF No. 14 at 32, ¶ 6.  Cheng was required to click *two* items indicating his assent to the UA.  The UA was thus a presumptively valid clickwrap agreement containing an arbitration clause.

A contract provision is unconscionable under Delaware law only if "no man in his senses

5

1    and not under delusion would make [it] on the one hand, and as no honest or fair man would

2    accept [it], on the other." *Tulowitzki v. Atlantic Richfield Co.*, 396 A.2d 956, 960 (Del. 1978).

3    Ignoring the outdated language of the Delaware test, this formulation has been divided into

4    procedural unconscionability—the lack of a meaningful choice—and substantive

5    unconscionability—unreasonably favorable terms to one party. *Progressive Int'l Corp. v. E.I. Du*

6    *Pont de Nemours & Co.*, 2002 WL 1558382, at *11 n.46 (Del. Ch. Jul. 9, 2002).  It is Cheng's

7    burden to prove unconscionability. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir.

8    1999).  Cheng's arguments that the arbitration agreement is unconscionable fit in both categories,

9    but none of them pass muster.

                    **i.      Procedural Unconscionability**

11       Three of Cheng's arguments involve alleged procedural unconscionability.  Cheng first

12   complains that PayPal unilaterally drafted the UA and has superior bargaining power to him.  Opp.

13   at 4.  But "[u]nequal bargaining power, without more, is insufficient to hold an arbitration

14   agreement unconscionable."  *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del.

15   2009); *see also Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903, at *12 (Del. Super. Ct. Jul. 1, 2021

16   ("An otherwise clear intent to arbitrate will not be invalidated merely because a party did not

17   negotiate the arbitration provision or participate in its drafting.").  One of the cases Cheng cites in

18   support—*In re Ritz Camera Image, L.L.C.*, 2014 WL 432192, at *4 (Bank. D. Del. Feb. 4,

19   2014)—is one in which the court found no procedural unconscionability, and other finds

20   procedural unconscionability in far more drastic circumstances than are present here.  *See Ryan v.*

21   *Weiner*, 610 A.2d 1377 (Del. Ch. 1992) (contract transferring deed unconscionable where bank

22   lawyer took plaintiff, a 69-year-old man with ninth-grade education, without notice to lawyer's

23   office, where he made plaintiff sign several documents transferring the deed without telling

24   plaintiff about the content of the documents or of his right to seek independent legal advice).

25       Second, Cheng argues that the arbitration agreement was buried in a "54 page[]" document

26   with "multiple sections and subsections."  Opp. at 5–6.  But under Delaware law, "a party may

27   assent to an agreement on the internet without reading its terms and still be bound by it if [h]e is

28   on notice that []he is modifying [his] legal rights, just as []he may with a physical written

United States District Court
Northern District of California

1  contract." *Newell Rubbermaid*, 2014 WL 1266827, at \*7.  Cheng was on notice that he was

2  modifying his legal rights.  He checked a box recognizing that he was agreeing to the UA and then

3  clicked a separate button saying "Agree and Create Account."  ECF No. 14 at 32, ¶ 6.  Because he

4  was clearly on notice that his legal rights were being modified, whether he did or did not read the

5  UA is irrelevant.  Even so, if he had opened the UA, its second paragraph indicated that the UA

6  contained "an agreement to resolve disputes by arbitration on an individual basis" and provided a

7  link directly to the arbitration agreement.  UA at 1.  The location of the arbitration agreement in

8  the UA does not make the arbitration agreement unconscionable.

9       Third and finally, Cheng complains about the requirement of physically mailing a notice to

10  PayPal in California within 30 days of agreeing to the UA to opt-out of the arbitration provision.

11  Opp. at 5–6.  Cheng says this particularly places a burden on him because he is an international

12  resident.  *Id.*  But the very existence of the opt-out option forecloses the necessary finding under

13  procedural unconscionability that Cheng "lacked a meaningful choice" about agreeing to the

14  arbitration provision.  *Mikkilineni*, 2021 WL 2763903, at \*11 (Del. Super. Ct. Jul. 1, 2021)

15  (compelling arbitration where plaintiff "could have opted-out" but "did not opt-out" because the

16  opt-out made the arbitration provision "neither compulsory nor a mandatory condition to

17  contracting with [defendant]").  The Court declines to find that the minimal steps necessary here—

18  mailing a notice to PayPal within 30 days of agreeing to the UA—amounted to a true lack of a

19  meaningful choice for Cheng, notwithstanding his international residence.

20       The arbitration clause is accordingly not procedurally unconscionable.

21       **ii.   Substantive Unconscionability**

22       Cheng's final argument against enforcing the arbitration agreement fits in the category of

23  substantive unconscionability.  Cheng points out that PayPal only promises to pay arbitration fees

24  if the claimant is seeking less than $10,000.  Opp. at 5.  As PayPal states, its offer to pay litigation

25  costs is not so limited.  PayPal in fact offers to pay additional arbitration costs, upon a showing of

26  need by the claimant, "as the arbitrator(s) deem necessary to prevent the cost of accessing the

27  arbitration from being prohibitive."  UA at 39.  Regardless, PayPal's promise to advance

28  arbitration fees in certain circumstances does not amount to substantive unconscionability because

1    it does not amount to a use of superior bargaining power "to take unfair advantage of another"

2    party.  *Fleck*, 1999 WL 1847435, at *3 (Del. Com. Pl. Jan. 29, 1999); *see also Graham v. State*

3    *Farm Mut. Auto Ins. Co.*, 565 A.3d 908, 912 (Del. 1989) (substantive unconscionability requires

4    terms to "be so one-sided as to be oppressive").  PayPal's offer to advance certain fees helps, not

5    harms, claimants.  The arbitration clause is not substantively unconscionable.

6        Because Cheng has not met his burden to show that the arbitration agreement is

7    unconscionable, the agreement to arbitrate is valid and enforceable.  Because PayPal has shown

8    that the claims asserted in this lawsuit are within the scope of the arbitration provision, the Court

9    will DISMISS this action WITHOUT PREJUDICE to filing a later action to confirm or vacate any

10   arbitration award.  *See Trudeau v. Google*, 349 F. Supp. 3d 869, 881 (N.D. Cal. 2018).

11   **C.    PayPal is Entitled to Some of the Costs It Requests for Litigating the State
             Court Action**

12

13       PayPal also asks the Court to award it costs that it incurred in defending the identical state

14   court action, which Cheng dismissed and refiled here upon receiving PayPal's state court motion

15   to compel arbitration.  MTC at 8–9.  PayPal points to Cheng's lack of explanation for dismissing

16   his state court case without warning and refiling it here.  *Id.*  Cheng says that the Court should

17   deny the request for costs, arguing that PayPal was able to reuse much of its research from its state

18   court motion to compel in the instant motion and that the relevant rule of civil procedure does not

19   allow for an award of attorneys' fees.  Opp. at 6–7.

20       "If a plaintiff who previously dismissed an action in any court files an action based on or

21   including the same claim against the same defendant, the court (1) may order the plaintiff to pay

22   all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff

23   has complied."  Fed. R. Civ. P. 41(d).  The rule is intended to "discourage indiscriminate and

24   vexatious litigation and unnecessary expenditures" and reduce incentives to forum shop.  *Esquivel*

25   *v. Arau*, 913 F. Supp. 1382, 1391 (C.D. Cal. 1996).  Costs should be reduced or not awarded if the

26   work performed in the first case "will still be useful to defendants in the instant litigation."  *Id.*; *cf.*

27   *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993) (plaintiff seeking Rule 41(a)(2) voluntary

28   dismissal to refile in another form can only be required to pay costs arising from "the preparation

United States District Court
Northern District of California

8

of work product rendered useless by the dismissal of [the previous action]").

### i. Costs Will Be Awarded Under Rule 41(d)

The Court finds that a partial award of costs is warranted here. Cheng has provided no justification—even in opposition, in response to PayPal's accusations of questionable litigation conduct—for dismissing his state court action while a motion to compel arbitration was pending and refiling an identical case in this court. Without any explanation from Cheng, the Court can only infer that Cheng was seeking to delay being sent to arbitration. This resulted in some "unnecessary expenditures" for PayPal which should be compensated. *Esquivel*, 913 F. Supp. at 1391.

Cheng's arguments against the award of costs are grounds for reducing the award, not awarding nothing. First, the Court recognizes the split in authority over whether the word "costs" in Rule 41(d) includes attorneys' fees. Opp. at 6; *compare, e.g.*, *Esquivel*, 913 F. Supp. at 1388–92 (extensively analyzing competing cases and concluding that the purpose of Rule 41(d) provides a basis for awarding attorneys' fees as part of "costs"), *with Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874–75 (6th Cir. 2000) (finding that "costs" under Rule 41(d) does not include attorneys' fees). The Court finds the extensive discussion and analysis in *Esquivel* more persuasive. The rule's purpose of "discourag[ing] indiscriminate and vexatious litigation and unnecessary expenditures by defending parties" would not be fulfilled if reimbursement was limited strictly to costs like filing fees. *Esquivel*, 913 F. Supp. at 1391; *see also Nielson v. Union Bank of California, N.A.*, 2003 WL 27374136, at *6 (C.D. Cal. Mar. 31, 2003) ("majority rule" of awarding attorneys' fees within costs "more accurately reflects the intent of Rule 41(d)"). The Court will include an award of attorneys' fees here.

Cheng also contends that any fee award should be reduced because PayPal was able to reuse its work in responding to the motion to compel in the instant case. Opp. at 6–7. PayPal responds that the bulk of the fees it incurred were for "efforts to merely start the arbitration process" and that "more than half of" its state court motion research was not reused in its federal motion. Reply at 8–9. The Court finds that some of PayPal's work from its state motion was "useful" to it here. The background section of the state court motion is almost entirely reused, and

1    some of the research discussing the standards applicable under the FAA and Delaware law are

2    reused.  *Compare* ECF No. 14 at 2–6, *with* ECF No. 18-2, Ex. 3 at 6–8, 9–12.  PayPal did,

3    however, have to conduct additional research on the California Arbitration Act that was not useful

4    in this Court.  *See* ECF No. 18-2, Ex. 3 at 8–9.  It also incurred costs in the state court and in

5    beginning the arbitration process that were lost when it had to start over in this Court.  Exercising

6    its discretion under Rule 41(d), the Court will reduce PayPal's request to account for reused work.

7                    ii.    **PayPal's Request for Costs Is Reasonable With a Reduction for Reused**
                            **Work**
8

9           The Court finds that the data underlying the cost request itself supports an award of fees to

10   PayPal.  Courts in this district follow the lodestar method to determine the reasonableness of a fee

11   request.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  Under the lodestar

12   method, the most useful starting point "is the number of hours reasonably expended on the

13   litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433

14   (1983), *abrogated on other grounds by Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*,

15   489 U.S. 782 (1989).  The party seeking an award of fees should submit evidence supporting the

16   hours worked and rates claimed.  *Id.*  "In determining a reasonable hourly rate, the district court

17   should be guided by the rate prevailing in the community for similar work performed by attorneys

18   of comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205,

19   1210–11 (9th Cir. 1986).  "Generally, the relevant community is the forum in which the district

20   court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997).  Cheng does not address the data

21   underlying PayPal's costs request.  On an independent examination, the Court finds it reasonable

22   with reductions for reused work.

23          First, the Court finds that the billing rates for the four attorneys for whom PayPal requests

24   fees—which range from $360 per hour to $530 per hour—are well within the range of reasonable

25   rates approved in this district.  *See, e.g.*, *Cataphora, Inc. v. Parker*, 848 F. Supp. 2d 1064, 1069

26   (N.D. Cal. 2012) (approving hourly rate of $500 per hour in contract case nearly one decade ago).

27          Second, the Court will reduce the number of hours that PayPal seeks to account for work

28   that was reused in this case.  PayPal has submitted billing records reflecting a total of 23 hours of

1   work across the four attorneys for drafting its motion to compel arbitration, performing other work

2   in the state court proceedings (such as drafting its case management statement), and readying the

3   case for arbitration.  Park Decl., ECF No. 14 at 98 ¶¶ 15–18.  The Court finds that the work was

4   distributed among the attorneys appropriately.  For example, Ms. Bohme spent the greatest

5   number of hours on the case, and she also has the lowest billing rate.  *Compare Carpenter's*

6   *Pension Trust Fund for N. Calif. v. Walker*, 2015 WL 1050479, at *2 (N.D. Cal. Mar. 9, 2015)

7   (reducing fees because work on a motion for summary judgment was not properly delegated to

8   attorneys with lower billing rates).

9        Looking to the individual entries, the Court finds reductions appropriate to account for

10   work that could be reused in this Court.  The Court recognizes that PayPal has already reduced its

11   request to eliminate work performed by paralegals and some work performed by the four

12   attorneys.  *See* Park Decl. Ex. C, ECF No. 14 at 130–34 (highlighted entries not included in costs

13   request).  But as the Court has already found, some of the work incurred in preparing the state

14   court motion to compel arbitration could be reused in this Court.  For example, the Court will

15   reduce Ms. Bohme's hours on March 31, 2021 spent "[d]raft[ing] motion to compel arbitration

16   and declaration under California law" from 4.2 hours to 2.5 hours to account for research reused in

17   the federal motion.  *Id.* at 133.  Similarly, the Court will reduce hours spent on initial strategy

18   discussions after which PayPal decided to move to compel arbitration.  *See, e.g.*, *id.* at 131 (entries

19   in late February 2021 involving strategy communications between counsel and PayPal).  That

20   strategy was partially reexecuted when PayPal filed its motion to compel in this Court.  The Court

21   will, in contrast, award PayPal its full request for the hours it spent on work solely useful in the

22   state court case, such as PayPal's preparation of its case management conference statement.  This

23   includes entries such as those by both Mr. Park and Ms. Bohme from April 28–30, 2021.  *See id.*

24   at 134.  After applying these principles to PayPal's billing records, the Court has calculated the

25   following table of costs:

26        / / /

27        / / /

28        / / /

United States District Court
Northern District of California

11

|  | Jae K. Park | Ingrid A. Bohme | Katie Jacobs | Morgan J. Hanson |
|---|---|---|---|---|
| **Hrs. Requested** | 6.9 | 15.4 | 0.4 | 0.2 |
| **Hrs. Awarded** | 4 | 9 | 0.2 | 0.1 |
| **Billing Rate** | x $530 | x $360 | x $375 | x $450 |
| **$ Awarded** | = $2,120 | = $3,240 | = $75 | = $45 |

The Court will also grant PayPal the $5.72 in filing fees it requests. *See* Park Decl. ¶ 19. Adding this to the subtotals above, the Court will award PayPal **$5,485.72** in total costs under Rule 41(d).

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that PayPal's motion to compel arbitration is GRANTED. This case is DISMISSED WITHOUT PREJUDICE to filing a later action to confirm or vacate the arbitration award. PayPal is AWARDED $5,485.72 in costs pursuant to Federal Rule of Civil Procedure 41(d).

Dated:  January 13, 2022

BETH LABSON FREEMAN
United States District Judge